UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DENISE KENDRICK,
on behalf of D.K.,

    Plaintiff,

v.                                                   Case No. 2:12-cv-523-FtM-29DNF

COMMISSIONER OF SOCIAL
SECURITY,[1]

    Defendant,
_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    Plaintiff, Denise Kendrick, on behalf of her minor son D.K., seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Child's Supplemental Security Income (SSI).[2] The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons explained below, it is respectfully recommended that the decision of the Commissioner be **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit. Fed. R. Civ. P. 25(d). No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] In Plaintiff's Complaint it is also requested that this Court enter Summary Judgment on the grounds that there is no genuine issue as to any material fact. At this time, the Court will review only the opinion of the Administrative Law Judge.

### I. Social Security Act Eligibility, the ALJ Decision and Standard of Review

### A. Eligibility

As in all Social Security disability cases, a claimant bears the burden of proving he is disabled within the meaning of the Social Security Act. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a), (c) (2010); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). This burden of proof on the claimant also exists for childhood SSI disability claims. The definition of childhood SSI disability provides that a claimant under the age of eighteen years shall be considered disabled if the claimant has a medically determinable physical or mental impairment which results in "marked and severe functional limitations," and that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. The regulations define the statutory standard of "marked and severe functional limitations" as "a level of severity that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.902; 20 C.F.R. §§ 416.906, 416.924(a), 416.926a(a); and 20 C.F.R. pt. 404, subpt. P, app. 1 (the Listing of Impairments).

The Commissioner has established a specific sequential evaluation process for determining whether a child claimant is disabled or not disabled. 20 C.F.R. § 416.924. The three-step process requires a child (or his guardian) to show: (1) that he is not working; (2) that he has a "severe" impairment or combination of impairments; and (3) that his impairment or combination of impairments is of listing level severity, that is, the impairment(s) meets or medically equals the severity of a set of criteria for an impairment in the listings, or functionally equals the listings. 20 C.F.R. § 416.924.

If a child claimant is not working and has a severe impairment, the fact finder must determine if the child's impairment(s) meets or medically equals an impairment in the listings. 20 C.F.R. § 416.924(a)-(d). If the child's impairment(s) does not meet or medically equal a listed impairment, the fact finder then must determine if the child's impairment(s) is functionally equivalent to the listings. 20 C.F.R. §§ 416.924(d), 416.926a (discussing functional equivalence). For the child's impairment(s) to functionally equal the listings, the child's impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The fact finder considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(d)(1).

## B. Procedural History

On January 21, 2009, Plaintiff, on behalf of her minor son D.K., filed an application for Supplemental Security Income (SSI) alleging an onset date of December 1, 2008. (Tr. 100-06, 129, 133).[3] Plaintiff alleged a disability due to attention deficit hyperactivity disorder (ADHD). (Tr. 100-106, 133). The claim was denied initially on March 6, 2009, and denied upon reconsideration on May 18, 2009. (Tr. 26). Plaintiff thereafter filed a written request for a review hearing before an Administrative Law Judge, which was granted and held on June 11, 2009. (Tr. 26). The ALJ issued an unfavorable decision that found D.K. had not been disabled within the meaning of the Social Security Act since the date of filing the application. (Tr. 23-37). Plaintiff sought review of the ALJ's decision which was denied by the Appeals Council. (Tr. 1-4). Thus, the ALJ's decision is the final decision of the Commissioner of Social Security in the present case. Plaintiff now seeks

---

[3] Although D.K. would not be entitled to receive SSI prior to the month the application was filed the ALJ appropriately considered the entire medical history provided. *See* 20 C.F.R. §§ 416.335; 416.912(d).

judicial review of the ALJ's decision in the United States District Court for the Middle District of Florida.

### C. Summary of the ALJ's Decision

The ALJ found that Plaintiff was born on February 10, 2000, was a school-aged child on January 21, 2009, the date which the application was filed, and was currently a school-aged child on the date of his decision. (Tr. 29). In evaluating Plaintiff's claim, the ALJ utilized the three-step sequential evaluation process to determine whether an individual under the age of eighteen is disabled. (Tr. 27). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. (Tr. 29). At step two, the ALJ determined that Plaintiff had attention deficit hyperactivity disorder as a severe impairment. (Tr. 29). At the third step, the ALJ determined that D.K.'s impairment was not one that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 29). The ALJ also evaluated Plaintiff under the "whole child" approach in order to determine if the impairment functionally equaled the requirements of a listed impairment. (Tr. 29). *See* 20 C.F.R. § 416.926a(b), (c); Social Security Ruling 09-1p.

The ALJ found that Plaintiff had no extreme limitations in any domain and only one marked limitation in the domain of interacting and relating with others. (Tr. 29-36). The ALJ also found that Plaintiff had less than marked limitations in the domains of Acquiring and Using Information, Attending and Completing Tasks, and Caring For Yourself. (Tr. 29-36). As a result, the ALJ concluded that Plaintiff's impairment did not functionally equal the severity of any listing. (Tr. 29-36). Therefore, the ALJ found that Plaintiff was not under any disability during any time from the date of the application through the date of the decision. (Tr. 37). *See* 20 C.F.R. § 416.924(a).

**D. Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla; i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**II. Review of Facts and Conclusions of Law**

**A. Administrative Hearing Testimony**

At the administrative hearing on September 13, 2010, Plaintiff testified as follows. D.K. was born on February 10, 2000, and was eight years old when his mother filed the SSI disability application and ten years old when the ALJ issued his decision. (Tr. 23, 29, 100). At the time of

the hearing D.K. was a fifth grade student in a special class designed for English for speakers of other languages (ESOL).[4] (Tr. 43). D.K. resides with Plaintiff, two sisters, and a brother. (Tr. 43, 49).

D.K. was diagnosed with attention deficit hyperactivity disorder (ADHD) in 2008 following an increase in functional problems in both school and home social interactions. (Tr. 44). Specifically, D.K. has had disciplinary problems at school including problems with teachers, fighting, and unruly behavior. (Tr. 44). D.K. was suspended from school for fighting seven times in the fourth grade. (Tr. 47). D.K.'s mother, Plaintiff, receives phone calls from the school with reports of unruly behavior in and outside of class such as violent behavior, aggressiveness with other students, refusing to sit down, and talking back. (Tr. 45, 48). As a result, D.K. was suspended from the Miami-Dade County School bus and his mother now takes him to school. (Tr. 49). D.K. received therapy in 2009 for his behavior where he was prescribed Adderall which showed no considerable results. (Tr. 46). At therapy, a reward system was implemented where D.K. would receive a game or prize if he was able to sit still and calm for more than ten minutes. (Tr. 46).

It was reported that D.K. has never harmed anyone, but has kicked the family dog at the house. (Tr. 47). When things of this nature happen, Plaintiff places D.K. in time-out or takes away his video game system. (Tr. 47). Plaintiff is currently in the process of placing D.K. in a school that handles children with disciplinary problems. (Tr. 48).

Plaintiff testified that, at school, teachers set aside ten to fifteen minutes each day to work with D.K. on problems he is having in class. (Tr. 46). Plaintiff works with D.K. daily on his homework and testifies that he only sits for ten minutes before becoming agitated and aggressive.

---

[4] During the hearing Plaintiff's attorney testifies that Plaintiff is in special education classes, ESOL. While this class is special education in the sense that it is not the typical course taken in the school system, it is designed for children who have problems speaking the English language rather than for those with determined mental learning disabilities.

-6-

(Tr. 50). After that time, D.K. yells, balls his fists, and slams the door to his room. (Tr. 50). Plaintiff also testified that her son's previous academic performance in the first and second grade, where he earned A's and B's, has since dwindled to a C average. (Tr. 54.) Plaintiff testified that even activities that D.K. enjoys such as video games are only able to capture his attention for ten minutes. (Tr. 51). On occasion, D.K. breaks video games and joy-sticks due to his aggravation. (Tr. 51).

D.K. has been visiting with a psychologist once a month since December of 2008 for these problems. (Tr. 53). Plaintiff testified that the visits to the psychologist along with the multiple variations of doses of Adderall prescribed have done little, if anything, to correct her son's problems.[5] (Tr. 53). D.K. does not take the Adderall willfully and Plaintiff has to monitor his intake in order to assure he has taken his medicine. (Tr. 53). The only side effect reported in the testimony as a result of taking Adderall is that D.K. has trouble sleeping at night. (Tr. 53).

### B. Summary of Record Evidence

On December 8, 2008, D.K. visited Aramy Barzaga, M.D., P.A., with Kids Hope United for a psychiatric evaluation. (Tr. 177-180). The chief complaint during the visit from Plaintiff was "my son needs medication". (Tr. 177). D.K.'s mother described that D.K.'s behavior and attentiveness had deteriorated over the past year. (Tr. 177). Dr. Barzaga noted there were no signs of depression in D.K. (Tr. 177). Under the mental status examination portion of the form, Dr. Barzaga listed D.K.'s activity as cooperative, his mood as happy, and his judgment as fair. (Tr. 178-79). Dr. Barzaga's diagnostic impression was attention deficit hyperactive disorder (ADHD). (Tr. 179). It was also recommended by Dr. Barzaga that D.K. consider behavior modification therapy. (Tr. 179).

---

[5] The Court notes that this testimony is in conflict with the only medical report in the record regarding Plaintiff's reaction to the drug, which provides that Plaintiff's attention has increased. (Tr. 198).

On January 2, 2009, D.K.'s teacher filled out a Child Symptom Inventory form at the request of Kids Hope United. (Tr. 181-84). It was noted that D.K. was attending a regular third grade class, was receiving no special education services, and was under no special education label (e.g., learning disability). (Tr. 181). D.K.'s reading, writing, spelling, and arithmetic were designated as at or about grade level. (Tr. 181). Other considerable notations were that D.K. fails to give close attention to details or makes careless mistakes, as well as loses his temper, very often. (Tr. 181-82). D.K.'s teacher also noted that he has experienced a big change in his ability to concentrate and has experienced a big drop in school grades or coursework. (Tr. 183).

On January 12, 2009, D.K. visited Kids Hope United where a school report was provided by Plaintiff explaining signs and traits in D.K. which Dr. Barzaga opined were consistent with ADHD. D.K. was prescribed Adderall XR five (5) mg. (Tr. 195).

D.K. visited Family and Children's Therapeutic Services (FACTS) on January 16, 2009, for a Bio-Psychosocial Assessment.[6] (Tr. 186-91). In the description of D.K.'s problem it was noted that the behavioral issues coincided with the move to a new school in August 2008. (Tr. 186). Under the social history section Plaintiff described D.K. as having good friends when asked about peer relationships. (Tr. 188). Under the significant events section of the form, D.K. stated that he did not like the change in schools because the new teachers continually yell at him. (Tr. 188). It was noted that D.K. was in the gifted program at his former school now receives "B's and C's." (Tr. 188).

A Mental Status Evaluation was also performed by the same doctor on January 16, 2009. (Tr. 190-91). D.K.'s attitude was listed as cooperative and appropriate, while his judgment and reliability were listed as fair. (Tr. 190). D.K.'s mood was also determined to be normal. (Tr. 190).

---

[6] Although the form was filled out by a licensed practitioner the name was illegible and therefore unable to be referenced.

The licensed practitioner recommended for D.K. to receive individual therapy to assist in managing his attention issues and outbursts. (Tr. 191).  A CFARS evaluation was also conducted where the only problem listed as moderate was D.K.'s hyperactivity, listing problems with sleep, inattentiveness and ADHD meds. (Tr. 193).  All other problems were determined to be less than moderate. (Tr. 193).

On January 26, 2009, D.K. was visited at his home by Viviana M. Miller, MSW, ICSW, on behalf of Family and Children's Therapeutic Services for a therapy session. (Tr. 198).  Ms. Miller documented that D.K. was oriented, welcoming, and easily engaged during the session. (Tr. 198).  D.K. also stated that he was doing better at school and his mother reported that he has made remarkable improvements since he started taking his medication. (Tr. 198).  D.K.'s mother also stated that D.K. "is now able to complete his homework without any issue . . . his attention has increased since he started the new medication." (Tr. 198).  The teachers were also reported to be happy with D.K.'s improvement. (Tr. 198).

On August 10, 2010, D.K. a Childhood Disability Form was completed by an unidentified person from PsychSolutions.[7] (Tr. 219-21).  This individual claimed on the form to have treated D.K. since December 8, 2008. (Tr. 219-21).  On that form it was determined that D.K.'s degree of limitation was "marked" in all six childhood domains of functioning. (Tr. 219-21).  The individual doing the evaluation opined that D.K. has had the limitations and restrictions outlined in the Childhood Disability Evaluation Form since January 1, 2009. (Tr. 222).  The opinion is listed as being based on direct observation/treatment and psychological evaluation. (Tr. 219-21).

---

[7] The signature at the bottom of the completed form was illegible and there was no printed name provided.

On August 24, 2010, a document was prepared and provided to D.K.'s counsel which documents D.K. was at that time taking ten (10) mg a day of Adderall, up from the five (5) previously stated above. (Tr. 213-214).

**C. State Agency Evaluations**

On March 5, 2009, Lee Reback Psy.D., P.A., completed a Childhood Disability Evaluation form at the request of the State. (Tr. 201-06). The impairment listed was Attention Deficit Hyperactivity Disorder, which was found to be severe, but did not meet, medically equal, or functionally equal the listings. (Tr. 201). Dr. Reback was tasked with evaluating D.K.'s functioning in each of the six domains.[8] (Tr. 203). Dr. Reback found no limitations in the domains of Acquiring and Using Information, Interacting and Relating with Others, and Moving About and Manipulating Objects. (Tr. 203-04). Dr. Reback found that D.K. had a marked limitation in the domain of Attending and Completing Tasks. (Tr. 203). This determination was based on teacher's reports stating that D.K. needs prompting on his ability to remain focused long enough to finish activities without careless mistakes and becoming agitated. (Tr. 203). Dr. Reback also determined that D.K. had a less than marked limitation in the domain of Caring for Yourself. (Tr. 204). Supporting this claim, Dr. Reback noted the teachers report stating D.K. had obvious difficulty handling frustration, patience, emotional needs, responding appropriately to changes in mood, and using appropriate coping skills. (Tr. 204).

On May 7, 2009, Wendy Silver Psy.D., completed a Childhood Disability Evaluation form at the request of the State. (Tr. 207-212). The impairment listed was Attention Deficit Hyperactivity Disorder, which was found to be severe, but did not meet, medically equal, or functionally equal the listings. (Tr. 207). Dr. Silver was tasked with evaluating D.K.'s functioning

---

[8] Dr. Reback did not make a determination on the sixth domain of Health and Physical Well-Being, instead marking the section as "N/A."

in each of the six domains. (Tr. 209). Dr. Silver found D.K. had no limitations in the domains of Acquiring and Using Information and Moving About and Manipulating Objects. (Tr. 209-210). Dr. Silver found that D.K. had a marked imitation in Attending and Completing Tasks. (Tr. 209). This finding was supported by D.K.'s teacher reporting serious to moderate problems in all area on a daily basis. (Tr. 209). Dr. Silver indicated the medical evidence did indicate improvement but at that time she chose to give the teacher more weight, and also the parent reported improvement at home. (Tr. 209). Dr. Silver determined that D.K. had a less than marked limitation in the domain of Interacting and Relating with Others. (Tr. 209). To support her claim, Dr. Silver notes that D.K. has friends and can make new friends but has had a problem in the past getting along with the teacher, which is now doing better. (Tr. 209). Dr. Silver also found D.K. to have a less than marked limitation in the domain of Caring for Yourself—citing moderate problems with frustration and coping skills. (Tr. 210). Dr. Silver ultimately determined that D.K.'s impairment or combination of impairments does not functionally equal the listings. (Tr. 211). In support of this finding Dr. Silver cites to reports by D.K.'s mother that he is doing much better with medications and a new teacher. (Tr. 212).

**D. Specific Issue**

Plaintiff raises a single issue on appeal: whether the ALJ's decision is supported by substantial evidence. (Doc. 19 p. 7). Plaintiff argues that the ALJ erred by failing to provide an explanation for his conclusion that D.K. has less than marked limitation in the domain of attending and completing tasks. (Doc. 19 p. 8). Plaintiff claims that the ALJ failed to address Dr. Silver and Dr. Reback's respective opinions, wherein each doctor found that Plaintiff had marked limitations in the ability to attend and complete tasks. (Doc. 19 p. 8). Plaintiff contends that the ALJ erred by failing to explain why less weight was given to these doctors' opinions. (Doc. 19 p. 8).

The Commissioner responds that the ALJ's opinion is supported by substantial evidence. (Doc. 20 p. 9). The Commissioner argues that the ALJ considered D.K.'s record as a whole and properly determined that he had a less than marked limitation in attending and completing. (Doc 20 p. 6). The Commissioner argues that, contrary to Plaintiff's claim that the ALJ erred by failing to discuss the weight he gave to Dr. Reback and Dr. Silver, the ALJ in fact devoted a full page to a comprehensive discussion of D.K.'s symptoms with citations to the record, two paragraphs to the consultants' assessments, and a third paragraph to explaining why he disagreed with their conclusion that D.K. had marked limitations in the domain of attending and completing tasks. (Doc. 20 p. 7).

As stated above, if a child claimant is not working and has a severe impairment, the fact finder must determine if the child's impairment(s) meets or medically equals an impairment in the listings. 20 C.F.R. § 416.924(a)-(d). If the child's impairment(s) does not meet or medically equal a listed impairment, the fact finder then must determine if the child's impairment(s) is functionally equivalent to the listings. 20 C.F.R. §§ 416.924(d), 416.926a (discussing functional equivalence). For the child's impairment(s) to functionally equal the listings, the child's impairment(s) must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). The fact finder considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(d)(1).

In this case, the Court begins by noting that the ALJ and both state agency psychological reviewers, Dr. Reback and Dr. Silver, all found that D.K. only had a single marked limitation in his domains of functioning and, thus, did not have an impairment functionally equaling the listings.

The ALJ's decision differed from the state agency opinions, however, in the determination of which domain of functioning D.K. was markedly limited. Whereas Dr. Reback and Dr. Silver found that D.K. had a marked limitation in the domain of attending and completing tasks, the ALJ found that D.K.'s only marked limitation was in the domain of interacting and relating to others.

In his opinion, the ALJ accorded the opinions of Dr. Reback and Dr. Silver "only some weight" and explained his reasoning as follows:

> Specifically, I disagree with their conclusion that the domain in which the claimant had "marked limitations" was in the domain of attending and completing tasks. I believe that it would have been more appropriate for [the state agency evaluators] to indicate that the "marked" degree of limitation pertained to the domain of interacting and relating with others, and so find.

(Tr. 31). Later in his opinion, the ALJ opined that,

> <u>The claimant has less than marked limitation in attending and completing tasks.</u> While the claimant's behavioral problems no doubt interfere with his abilities to stay on task, I do not find that the evidence supports the conclusion that his limitation in this area are "marked" in their severity.

(Tr. 31) (emphasis in original).

Although Dr. Silver and Dr. Reback were not treating physicians of D.K., the ALJ was still required to state the weight he accorded their opinions and the reasons therefor. *See Winschel,* 631 F.3d at 1178-79. The ALJ properly stated the weight he gave Dr. Silver and Dr. Reback's opinions and explained why he accorded their opinions "only some weight." Contrary to Plaintiff's claim, the Court does not find the ALJ's reasoning illogical or unsupported by substantial evidence. The ALJ noted that the record indicates that D.K. responded positively to medical treatment. (Tr. 30). After being prescribed Adderall in January 2009, D.K.'s mother reported to a social worker that D.K.'s attention span had increased and that he was able to complete his homework without any issue. (Tr. 30, 198). Plaintiff also reported that D.K. had made remarkable improvements and his teacher was pleased. (Tr. 30, 190). On January 16, 2009, a social worker assessed that D.K.'s

hyperactivity was a "moderate problem" and his cognitive performance was a "less than slight" problem. (Tr. 30, 193). The ALJ noted that D.K. scored a 68 on the Global Assessment of Functioning scale, which indicated a generally well-functioning state of being. (Tr. 30). For these reasons, the ALJ reasonably found that D.K. had a less than marked limitation in the function domain of attending and completing tasks.

Further, substantial evidence supports the ALJ's decision that D.K. had a marked limitation in interacting and relating to others. The ALJ noted that D.K.'s mother testified at the hearing that D.K. has difficulty getting along with his father, fellow students, and siblings. (Tr. 44). D.K.'s mother further testified that D.K. was suspended from school seven times for fighting in the fourth grade. (Tr. 47). D.K.'s mother testified that she had already been called three times by D.K.'s school during D.K.'s fifth grade year due to his problems with authority, violent behavior, and aggressiveness with other students. (Tr. 48). For these reasons, the Court finds that substantial evidence supports the ALJ's determination that D.K. has a marked limitation in his ability to interact and relate to others.

### E. Conclusion

Substantial evidence supports the ALJ's decision that D.K. has not been disabled, as defined in the Social Security Act, since January 21, 2009, through the date his application was filed. Accordingly, it is **RESPECTFULLY RECCOMENDED** that:

> The decision of the Commissioner be **AFFIRMED** pursuant to 42 U.S.C. § 405(g); § 205(g) of the Social Security Act.

**Respectfully recommended** in Chambers in Ft. Myers, Florida, this 11th day of February, 2014.

[signature]
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 6.02 within fourteen days of the date of its filing shall bar an aggrieved party from a *de novo* determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

The Court Requests that the Clerk of Court Mail or Deliver Copies of this Order to All Parties and All Counsel of Record